DAVID GOLUBCHIK (State Bar No. 185530)
YIHAN SHE (State Bar No. 348334)
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: DBG@LNBYG.COM; YAS@LNBYG.COM

Bankruptcy Counsel for
Erin Elizabeth Burke, Debtor and Debtor in
Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>ERIN ELIZABETH BURKE,<br><br>      Debtor and Debtor in<br>      Possession. | Case No. 2:24-bk-14882-BB<br><br>Chapter 11<br>Subchapter V<br><br>**NOTICE OF SUBMISSION OF <u>REDLINE VERSION</u> OF "DEBTOR'S FIRST AMENDED SUB-CHAPTER V PLAN OF REORGANIZATION"**<br><br><u>Plan Confirmation Hearing</u>:<br>Date:  December 11, 2024<br>Time: 11:00 a.m.<br>Courtroom: 1539<br>Place: 255 E. Temple Street<br>          Los Angeles, CA 90012 |

///

///

///

///

///

1

1

2

**PLEASE TAKE NOTICE** that Erin Elizabeth Burke ("Debtor"), hereby submits a redline

3

version of that certain "*Debtor's First Amended Sub-Chapter V Plan Of Reorganization*", which is

attached hereto as **Exhibit "A".**

4

DATED:  October 25, 2024                    LEVENE, NEALE, BENDER, YOO & GOLUBCHIK,

5                                                          L.L.P.

6                                                     By:    */s/ David Golubchik*

7                                                               DAVID GOLUBCHIK
                                                               YIHAN SHE

8                                                               Bankruptcy Counsel for Erin Elizabeth Burke,
                                                               Debtor and Debtor in Possession

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT A**

DAVID GOLUBCHIK (State Bar No. 185530)
YIHAN SHE (State Bar No. 348334)
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: DBG@LNBYG.COM; YAS@LNBYG.COM

Bankruptcy Counsel for
Erin Elizabeth Burke, Debtor and Debtor in
Possession

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re | Case No. 2:24-bk-14882-BB |
| ERIN ELIZABETH BURKE, | Chapter 11<br>Subchapter V |
|       Debtor and Debtor in<br>      Possession. | **DEBTOR'S FIRST AMENDED ~~SUB SUB~~ CHAPTER V PLAN OF REORGANIZATION** |
| | ~~Status Conference~~ Plan Confirmation Hearing: |
| | Date: ~~October 8~~ December 11, 2024 |
| | Time: ~~10~~11:~~30~~00 a.m. |
| | Courtroom: 1539 |
| | Place: 255 E. Temple Street<br>       Los Angeles, CA 90012 |

DEBTOR'S FIRST AMENDED CHAPTER 11 PLAN

## I.    INTRODUCTION

On June 20, 2024 (the "Petition Date"), Erin Elizabeth Burke (the "Debtor") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Central District of California, Los Angeles Division.  The Debtor has elected to proceed under Subchapter V of Chapter 11 and continues to administer her estate as a debtor in possession pursuant to title 11 of the Bankruptcy Code sections 1182(2) and 1184.  The Office of United States Trustee appointed Gregory Kent Jones as the Subchapter V Trustee (the "Sub V Trustee").

Subchapter V of Chapter 11 permits the Debtor (and only the Debtor) to propose a plan.  11 U.S.C. 1181(a).  This document is the Debtor's plan (the "Plan"), which includes: (i) background related to the Debtor's Chapter 11 proceeding, (ii) a liquidation analysis, and (iii) projections and declarations with respect to the ability of the Debtor's to make payments under the Plan.  The information in this Plan is provided to help creditors and interested parties understand the Plan and to decide whether to vote to accept or reject the Plan or otherwise file objections.

The effective date of the Plan (the "Effective Date") will be the ~~later of (i) the~~ first day of the calendar month which is at least fourteen days after the entry of the Court's order confirming the Plan (the "Plan Confirmation Order"), provided that the Plan Confirmation Order has not been stayed by an order of the Court, ~~and (ii) the satisfaction or waiver by the Debtor of all of the following conditions to the effectiveness of the Plan: (a) there shall not be any stay in effect with respect to the Plan Confirmation Order; (b) the Plan Confirmation Order shall not be subject to a stay pending appeal; to any appeal or rehearing; and (c) the Plan and all documents, instruments and agreements to be executed in connection with the Plan have been executed and delivered by all parties to such documents, instruments and agreements~~.  The Debtor following the Effective Date, shall be referred to as the reorganized debtor (the "Reorganized Debtor").

## II.    FACTUAL BACKGROUND OF THE DEBTOR

The Debtor, Erin Elizabeth Burke, is an accomplished individual entrepreneur with diverse business interests, primarily focused on the home furnishings sector.  Her business acumen has led

---

1

to the creation and management of a network of interconnected companies that leverage synergies across e-commerce and retail.

Ms. Burke's primary business is centered around Burke Décor, LLC (the "Burke Décor"), a high-end home furnishings and décor retailer. Burke Décor operates primarily as an e-commerce platform, offering a curated selection of luxury home furnishings and décor to a discerning customer base. To complement its online presence, Burke Décor maintains a physical showroom on Beverly Boulevard in Los Angeles, California and in Youngstown, Ohio, both of which serves as both a showcase for the brand's offerings and a strategic touchpoint for customers preferring an in-person shopping experience.

In addition to Burke Décor, the Debtor holds 100% ownership interests in several other limited liability companies, including:

a. Furnishings LA, LLC (no operations);

b. 222 N. Brand Blvd Realty LLC (owns commercial building in middle of renovation);

c. 7373 Market Street Realty LLC (owns commercial building);

d. 300 Boardman Poland Road Realty LLC (owns commercial building);

e. Au Marche LLC (no operations);

f. Enchante LLC (no operations); and

g. DH Décor LLC (no operations).

These entities were involved in various aspects of the Debtor's business operations, including real estate holdings and complementary business ventures in the home furnishings and décor space.

Despite Burke Décor's historically strong brand recognition and loyal customer base, the company has faced significant challenges in recent years. The e-commerce home furnishings space has become increasingly competitive, putting pressure on Burke Décor's margins and market share. This competitive landscape has been further complicated by supply chain disruptions and increased inventory costs, particularly in the wake of global economic uncertainties.

The company has also grappled with operational inefficiencies between its online platform and brick-and-mortar showroom, resulting in higher than anticipated costs. These challenges were

DEBTOR'S FIRST AMENDED CHAPTER 11 PLAN

exacerbated by an overleveraged balance sheet, a consequence of rapid expansion efforts that

stretched the company's financial resources.

The confluence of these challenges led to severe liquidity constraints for Burke Décor.  In

an effort to keep the business afloat, the Debtor personally guaranteed various business obligations,

thereby incurring substantial personal liability.  This intertwining of personal and business finances

would prove to be a critical factor in the events that followed.

Further complicating matters, AMPLA, LLC, the primary lender to Burke Décor,

commenced a collection action against Burke Décor and the Debtor, as guarantor of the debt, which

action is was pending in the U.S. District Court for the Northern District of Ohio and has been, or is

in the process of being, dismissed.  Moreover, Burke Décor became the subject of a consumer

protection matter before the Ohio Attorney General's Office.  Adding to these issues, Metropolitan

Warehouse & Delivery Corp. brought suit against both Burke Décor, LLC and the Debtor,

personally, in the Superior Court of New Jersey.

Finally, through her wholly-owned LLC, 222 N. Brand Blvd Realty LLC, the Debtor owns

a commercial property in Glendale, CA, which is undergoing substantial renovations.  The property

is subject to a first priority lien in the amount of approximately $5 million.  Based on the costs

associated with the renovation (an additional estimated $1.2 million is needed), the Debtor placed

the property on the market for sale.  Notwithstanding the Debtor's efforts, a sale was not

consummated for an amount sufficient to pay off the loan and provide a distribution to the owner.

The Debtor understands that the lender intends to proceed with a foreclosure of the property.

The foregoing legal actions and real estate pressures not only added to the financial strain

but also consumed valuable time and resources, further exacerbating the company's, and the

Debtor's position.

By early 2024, the mounting financial pressures made it clear that a comprehensive

restructuring was necessary.  The Debtor recognized that any effective solution would need to

address not only the operational challenges faced by Burke Décor but also her own personal

financial situation and the potential personal exposure that the Debtor faced as a result of Burke

1 Décor.    In order to obtain a respite from litigation and other pressures while reorganizing her

2 efforts, the Debtor determined that this filing was necessary and proper.

3 **Objectives of the Chapter 11 Case**

4 Through this chapter 11 case, the Debtor seeks to address her financial challenges

5 comprehensively and position herself and her businesses for future success.  At the core of her

6 strategy is the restructuring and satisfaction of debt being asserted against the Debtor, individually,

7 with the aim of creating a sustainable financial future.

8 In an overabundance of caution, the Debtor's schedules included personal debt as well as

9 Burke Décor business debt which the Debtor is not personally liable for to ensure that all putative

10 creditors receive notice and assert claims.  This has occurred and certain filed claims are clearly not

11 the obligation of the Debtor.  The Debtor intends to file claim objections to address such claims.

12 In addition, this bankruptcy filing has resulted in a stay of litigation, which provided the

13 Debtor with an opportunity to analyze her assets and finances in order to propose a feasible plan of

14 reorganization for the benefit of all creditors.

15 The Debtor has utilized the time in this bankruptcy case to, not only analyze her assets, but

16 to formulate a reorganization strategy, as discussed below.  While the Debtor has listed the real

17 properties owned by her LLCs for sale, the process has taken a long time and, in today's market,

18 the timing and likely prospects are uncertain.  Fortunately, as evidenced by the accompanying

19 Declaration of Michele Burke, through negotiations and discussions with certain family members,

20 the Debtor has received commitment that, upon confirmation of the Plan, and not later than seven

21 (7) day before the Effective Date, the Debtor's family members will contribute to the Debtor all

22 funds required under this Plan.  This will result in maximum and quickest payment to creditors

23 under the circumstances of this case.  In addition, since funds will be on hand by the date of the

24 Plan confirmation hearing, there should be no issue with feasibility analysis under the Plan.  The

25 Debtor believes that this is a huge benefit for all creditors and parties in interest herein.

26 **Assets and Liabilities**

27 The Debtor's financial portfolio comprises a mix of personal and business-related assets and

28 liabilities.  Among her primary assets is her personal residence in Los Angeles, California, a

4

significant piece of real estate in a competitive market.  Additionally, the Debtor holds 100% ownership interests in several limited liability companies, as discussed above.  These business interests form a substantial portion of her asset base and represent her ongoing involvement in the home furnishings and real estate sectors.  Complementing these major assets are various forms of personal property, including investments, retirement accounts, and other liquid assets, which provide some financial flexibility.

On the liabilities side, the majority of the Debtor's  debt consists of guaranties of Burke Decor's corporate debt.  In addition to these guarantees, the Debtor has direct loans and lines of credit that were utilized over the years, as well as personal guaranties of real estate loans to her LLC entities.

Please note that this overview provides only a high-level summary of the Debtor's financial situation.  For a more comprehensive and detailed breakdown of the Debtor's assets and liabilities, please refer to the Schedules and Statement of Financial Affairs filed with the Bankruptcy Court (Case Dkt. 20), copies of which are attached hereto as **Exhibit "A"**.

**Historical Financials**

The Debtor's income situation is complex and has undergone significant changes in recent years.  Historically, the Debtor receive income from two (2) sources:

1. Burke Décor, which is an online furniture retailer owned 100% by the Debtor; and
2. Truck World, where the Debtor is an employee and receives income subject to W-2 reporting.

Based on the financial difficulties suffered by Burke Décor, the Debtor has received minimal, if any, income therefrom.  The Debtor continues to receive income from Truck World, where she serves as President.  As reported in Schedule I filed on July 5, 2024 (Case Docket No. 20):

- Current monthly gross wages: $7,692.00
- Estimated monthly take-home pay after deductions: $5,658.00

Historical income from Truck World, as reported in the Statement of Financial Affairs filed on July 5, 2024 (Docket No. 20):

- Year-to-date 2024 (as of filing date, June 20, 2024): $43,588.00
- 2023: $92,304.00
- 2022: $92,304.00

The Debtor has been employed by Truck World since 2005[, providing a stable source of income]. This income is expected to continue throughout the duration of the Plan.

~~However~~Attached hereto as **Exhibit "E,"** are the Debtor's anticipated cash flow projections over a five year period. ~~Nevertheless~~Based on the foregoing, it is clear that her monthly income is insufficient to fund her living expenses with a distribution to fund a plan and, therefore, there is no anticipated disposable income which can be used to fund a plan of reorganization.

~~Based on the foregoing, and t~~Therefore, this Plan is not based on net disposable income to fund a plan. Rather, the Debtor has conducted a thorough valuation of her assets and LLC interests and is proposing to pay to creditors 100% of the estate's net value in such assets in an amount substantially greater than liquidation value.

**Restructuring Strategy**

The Debtor's plan of reorganization is designed to address her financial challenges comprehensively while balancing the interests of all stakeholders. At its core, the plan aims to maximize recovery for creditors based on the current financial situation and available assets. Importantly, to achieve this goal, the Debtor has secured a commitment from her family members to fund the entirety of the Plan prior to the Effective Date to ensure the proposed distributions to creditors.

For claims that the Debtor identifies as objectionable, funds which would otherwise be utilized for distribution will be set aside and distributed upon the Court's resolution of any claim objection(s).

The Debtor's family will contribute 100% of the estate's net value as prepared by the Debtor's financial advisor on the effective date of the plan, a copy of which is attached hereto as **Exhibit "B"**, which proposed amount is substantially in excess of the liquidation value. In exchange for this contribution, the family will receive liens on the real properties held by the Debtor's LLCs. This arrangement provides immediate liquidity for creditor distributions.

The plan also addresses tax liabilities. The Debtor or her affiliate(s) will engage a qualified tax professional to review and amend tax returns, which may alter the amount of the IRS priority claim. Pending such resolution, funds will be reserved for the IRS and maintained in an account held by LNBYG.  In addition, to the extent that the tax liability is reduced, the net difference will be added to distributions for the benefit of general unsecured creditors in Classes 2A and 2B under this Plan.

By addressing all issues in tandem, the Debtor believes this Plan will maximize value for all stakeholders.  It offers a balanced and proactive approach that not only addresses the immediate financial pressures but also lays the groundwork for future success, providing a viable path forward for the Debtor's business enterprises and ensuring that all parties are able to benefit from the reorganization process.

### III.  TREATMENT OF UNCLASSIFIED CLAIMS

As required by the Bankruptcy Code, the Plan classifies certain Claims and Interests in various Classes according to their right to priority and leaves other types of Claims unclassified as specified in Section IV of the Plan.  Also, as required by the Bankruptcy Code, the Plan states whether each Class of Claims or Interests is impaired or unimpaired and describes the treatment each class will receive.

**3.1**    *Administrative Claims*

Administrative Claims are Claims for costs or expenses of administering the Debtor's Bankruptcy Case that are allowed under Section 507(a)(2).  The Bankruptcy Code requires that all Administrative Claims that are allowed to be paid on the Effective Date unless a particular claimant agrees to a different treatment.

The following chart lists all of the Debtor's estimated § 507(a)(2) Administrative Claims for professionals employed by the Estate (the "Professional Fee Claims") that will be owed as of the Effective Date and their treatment under the Plan.

| Name | Amount Owed | | Treatment |
|---|---|---|---|
| Clerk's Office Fees | $0 | | Paid in full on the Effective |

| | | | Date |
|---|---|---|---|
| Levene, Neale, Bender, Yoo & Golubchik L.L.P., the Debtor's bankruptcy counsel | $0 | | It is anticipated that no payments will be required through the Effective Date in excess of pre-petition retainer received. ~~A pre-petition retainer of $125,000 was received in two parts: $95,000 on June 18, 2024, and $30,000 on June 20, 2024.~~ Debtor paid to LNBYG a pre-petition retainer of LNBYG does not anticipate the need for additional payments in excess of the retainer. |
| Gregory Kent Jones, Subchapter V Trustee | $20,000 (est.) | | Paid in full on the later of the Effective Date or entry of a court order approving fees and costs |
| Armory Consulting Co., Financial Advisor to Debtor | $30,000 (est. amount in excess of pre-petition retainer of $25,000) | | Paid in full on the later of the Effective Date or entry of a court order approving fees and costs |

The Court must approve all professional fees and expenses listed in this chart before they may be paid. For all professional fees and expenses (except fees owing to the Clerk of the Bankruptcy Court), the professional in question must file and serve a properly noticed fee application and the Bankruptcy Court must rule on the application. Only the amount of fees and expenses allowed by the Bankruptcy Court will be required to be paid under the Plan. The Administrative Claim amounts set forth above simply represent the Debtor's best estimates as to the amount of the administrative claims in the Bankruptcy Case. The actual administrative claims may be higher or lower. Much of whether the actual administrative claims described above for professional will be dependent upon whether the Debtor will be required to engage in any substantial litigation regarding the confirmation of the Plan and / or objecting to claims. To the

1  extent the Debtor is required to engage in any such substantial litigation, the Debtor will incur

2  professional fees and expenses in excess (and possibly substantially in excess) of the figures set

3  forth above.  By voting to accept the Plan, creditors are not acknowledging the validity of, or

4  consenting to the amount of, any of these professional fee claims, and creditors are not waiving any

5  of their rights to object to the allowance of any of these claims.  By including the figures described

6  above, the Debtor is not acknowledging the validity of, or consenting to the amount of, any of these

7  claims, and the Debtor or the Reorganized Debtor are not waiving any of their rights to object to

8  the allowance of any of claims.  Similarly, professionals who have been employed in this

9  bankruptcy case are not being deemed to have agreed that the figures contained herein represent

10 any ceiling on the amount of fees and expenses that they have incurred or are entitled to seek to be

11 paid pursuant to Bankruptcy Court order as such fees and expenses are just estimates provided at

12 the time of the preparation of the Plan.

13         To the extent Administrative Claims are allowed prior to the Effective Date, such allowed

14 Administrative Claims may be paid by the Debtor out of the Debtor's funds provided the Debtor

15 has sufficient funds to pay them.  To the extent administrative claims are allowed after the

16 Effective Date, such allowed administrative claims will be paid by the Reorganized Debtor.

17 **Payment of Post-Effective Date Professional Fees and Expenses.**

18         Except as otherwise provided in this Plan or ordered by the Bankruptcy Court, on and after

19 the Effective Date, the Reorganized Debtor shall, in the ordinary course of business without any

20 further notice or action, order or approval of the Bankruptcy Court, pay with available cash any

21 reasonable legal, professional, or other fees and expenses related to implementation and

22 consummation of this Plan incurred by Professionals retained by the Debtor, and incurred by the

23 Trustee.  Upon the Effective Date, the requirement that Professionals comply with Sections 327

24 through 331, 363 and 1103 of the Bankruptcy Code after such date shall terminate, and the Debtor

25 may employ any Professional in the ordinary course of business without any further notice to or

26 action, order, or approval of the Bankruptcy Court.

27 3.2     *Priority Tax Claims*

28

Prepetition priority tax claims include certain unsecured income, employment and other taxes described by Section 507(a)(8) of the Bankruptcy Code. Section 1129(a)(9)(C) of the Bankruptcy Code requires that each holder of such a Section 507(a)(8) priority tax claim receive regular installment payments of a total value, as of the Plan Effective Date, equal to the allowed amount of such allowed tax claims, over a period ending not later than five years after the Petition Date, and not less favorable than other creditors paid under the Plan. Interest rates on these claims are conclusively determined by applicable non-bankruptcy law as of the month that the Plan is confirmed. 11 U.S.C. § 511.

Under the Plan, all allowed Section 507(a)(8) priority tax claims will be paid in full on the Effective Date or as soon thereafter as is practicable after resolution of any objections or determination of debt after the filing of amended returns, however the case may be.

A failure by the Debtor to make a payment on the priority tax claims pursuant to the terms of the Plan will be an event of default. If the event of default is not cured within thirty (30) days after service of written notice of default from the taxing authority, then the taxing authority may enforce its applicable remedies exclusively by application to the Bankruptcy Court and with jurisdiction maintained exclusively by the Bankruptcy Court. The chart below indicates all priority tax claims which were either scheduled by the Debtor or asserted by the taxing agencies in timely filed proofs of claim. The inclusion of the claims in the chart below is intended simply to reflect the claims that have been scheduled and/or asserted in timely filed proofs of claim as priority tax claims, and is not intended to be a concession by the Debtor regarding the validity of the amount of any such claims or the classification of such claims as priority tax claims under Section 507(a)(8) of the Bankruptcy Code.

| Description | Treatment |
|---|---|
| <u>Claimant:</u><br>Internal Revenue Service<br><br><u>Type of Claim</u>: Priority Claim and General Unsecured Claim | (a) Priority Portion: The Debtor is working on analyzing and, if appropriate, amending her prior tax returns which may affect this tax liability. In the event that the Debtor does not file her amended returns prior to the Effective Date, then, on the Effective Date or as soon as practical thereafter, the Debtor shall pay to the IRS $705,263.53 on |

| (Claim No. 7) | account of its priority unsecured claim.  In the event that amended tax return(s) is/are filed prior to the Effective Date, payment shall be delayed until a new assessment or amendment by the IRS.  Any payment delays shall include interest at the applicable statutory rate under 26 U.S.C. § 6621. |
| Claim Amount: $705,263.53 (Priority Claim) | |
| $105,908.08 (General Unsecured Claim) | |
| | (b) General Unsecured Portion: The general unsecured portion of the IRS claim in the amount of $105,908.08 shall be treated as a Class 2A General Unsecured Claim. |
| | The Debtor reserves the right to object to this claim and to seek determination of tax liability under 11 U.S.C. § 505. |
| Claimant: Pennsylvania Department of Revenue | (a) Priority Portion: The Debtor is working on analyzing and, if appropriate, amending her prior tax returns which may affect this tax liability.  In the event that the Debtor does not file her amended returns prior to the Effective Date, then, on the Effective Date or as soon as practical thereafter, the Debtor shall pay to claimant $49,057.57 on account of its priority unsecured claim.  In the event that amended tax return(s) is/are filed prior to the Effective Date, payment shall be delayed until a new assessment or amendment by claimant.  Any payment delays shall include interest at the applicable statutory rate under 26 U.S.C. § 6621. |
| Type of Claim: Priority Claim and General Unsecured Claim (Claim No. 11) | |
| Claim Amount: $49,057.57 (Priority Claim) | |
| $11,790.91 (General Unsecured Claim) | |
| | (b) General Unsecured Portion: The general unsecured portion of the claim in the amount of $11,790.91 shall be treated as a Class 2A General Unsecured Claim. |
| | The Debtor reserves the right to object to this claim and to seek determination of tax liability under 11 U.S.C. § 505. |

## IV.  CLASSIFICATION AND TREATMENT OF CLAIMS

4.1    Class 1 – *Allowed Secured Claim*

Class 1 consists of all Allowed Secured Claims.  Each holder of an Allowed Secured Claim shall be treated as a separate subclass for voting and distribution purposes.

4.1.1   Class 1A – *Allowed Secured Claim of U.S. Bank Trust National Association*

| Class # | Description | Voting (Y/N) | Treatment |
|---------|-------------|--------------|-----------|

11

| | | | |
|---|---|---|---|
| 1A | Claimant: U.S. Bank Trust National Association c/o NewRez LLC d/b/a Shellpoint Mortgage Servicing<br><br>Type of Claim: Allowed Secured Claim<br><br>Claim Amount: $2,799,773.51 (Claim No. 13)<br><br>Arrearage: $23,512<br><br>Collateral: Debtor's primary residence at 6411 Ivarene Ave, Los Angeles | ~~Impaired~~<br><br>Unimpaired<br><br>Not Entitled to Vote. | On the Effective Date, the Debtor will cure any default that occurred before or after the commencement of the Chapter 11 Case by paying the arrearage amount of $23,512 in full. ~~make a payment to claimant in the amount of the arrears, if any, which assertion is being investigated at this time. If a dispute exists, the funds will be maintained in a segregated account pending resolution thereof.~~<br><br>Thereafter, the Debtor will continue to make all required payments according to the original loan terms.<br><br>Any default related to the obligations to claimant shall be deemed waived and forgiven. Other than as set forth herein, claimant's liens shall be unaffected by the Plan and shall remain on the property with the same validity, priority and extent as it held immediately prior to the Petition Date. |

4.1.2   Class 1B – *Allowed Secured Claim of Bank of America, N.A.*

| Class # | Description | Voting (Y/N) | Treatment |
|---|---|---|---|
| 1B | Claimant: Bank of America, N.A.<br><br>Type of Claim: Allowed Secured Claim<br><br>Claim Amount: $20,186.88 (Claim No. 16)<br><br>Collateral: Securities Account (Pledge Account / Control) | ~~Un~~Impaired<br><br>Not Entitled to Vote. | Claimant's secured claim is collateralized by the Debtor's investment portfolio, which has a value of approximately $33,000. The Debtor and Claimant have ~~intends to~~ stipulated ~~with claimant~~ to allow ~~claimant~~ Claimant to liquidate Debtor's portfolio, receive payment and ~~execute on its collateral and~~ release ~~the balance~~ any remaining surplus to the Debtor. No other payments will be made. To the extent this occurs prior to Plan confirmation, this claim will be satisfied and eliminated. |

4.3   Class 2 – All *General Unsecured Claims* ~~(Except Claim 15 of Zions Bancorporation, N.A.)~~.

General unsecured claims are unsecured claims not entitled to priority under Bankruptcy Code Section 507(a). The unsecured claims are separated into two (2) classes:

A.    Class 2A consists of general unsecured claims that are not contingent on satisfaction of third party obligations (e.g. guaranty claims); and

B.    Class 2B consists of general unsecured claims that are contingent and unliquidated, the determination of which will be determined subject to satisfaction of obligations, or part thereof, through third parties.

For purposes of parity, the Plan will take into consideration the total amount of all general unsecured claims, including, maximum exposure for Class 2B contingent claims (the "Total Potential Claims"). The proposed distribution under the Plan will be made based on pro-rata share of available funds divided by the Total Potential Claims. In the event that the Total Potential Claims are reduced over time (such as through third party payments), this will result in further distributions to remaining general unsecured creditors, thereby increasing the pool of funds available for such payments.

Based on the Debtor's calculations of scheduled and filed proof of claims, the Total Potential Claims amount is $16,237,404.13, consisting of $3,114,463.96 in Class 2A general unsecured claims and $13,122,940.17 in Class 2B general unsecured claims. As discussed elsewhere, initially, the Debtor anticipates distribution to all Class 2 claims in the amount of $672,168. Based on Total Potential Claims of $16,237,404.13, a distribution of $672,168 est. results in a pro-rata distribution of approximately 4.1%. As discussed above, to the extent that the Debtor is successful in reducing her priority tax obligations, then those savings will be added to distributions for the benefit of Class 2 creditors, thereby increasing the percentage recovery.

The following chart identifies the Plan's treatment of the class containing all of the Debtor's non-priority general unsecured claims (See the Claims Chart for detailed information about each general unsecured claim attached hereto as **Exhibit "C"**):

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 2A | All general unsecured claims of the Debtor ~~not included in any other class and excluding Claim 15 of Zions Bancorporation, N.A.~~ excluding Class 2B claims<br><br>Total amount of Class 2A claims: $~~10.48~~93,114,468.9 ~~6~~ million estimated.<br><br>The Claims Chart attached as **Exhibit "C"** to the Plan shows all claims which were scheduled by the Debtor and all proofs of claim which have been filed against the Debtor that are in Class 2A and 2B. | Yes.<br><br>Entitled to vote | In full and final satisfaction of each, any, and all of their claims against the Debtor, each holder of a Class 2A and 2B allowed claim will receive a cash payment equal to its prorated share of the ~~Plan Funds~~fund remaining after payment of all senior classes of claims which amount is estimated to be $672,168.<br><br>Class 2A will not receive interest on their claims.<br><br>As discussed above, ~~I~~it is estimated that the initial recovery of Class 2A creditors, based on distribution of $672,168, will be approximately ~~6.4~~4.1%, which amount may increase in the event that (a) Total Potential Claims will decrease, and (b) the amount to be paid to priority tax claimants will decrease.<br><br>Distributions on account of claims subject to dispute shall be maintained by the Disbursing Agent pending resolution of the disputes and paid promptly thereafter.<br><br>~~Notwithstanding the foregoing, payments to Class 2A creditors will be based on their pro-rata share of $672,168 and not based on anticipated percentage recovery estimated herein.~~ |

| 2B | All general unsecured claims of the Debtor subject to contingency based on Debtor's guaranty of third party claims. | Yes. Entitled to vote | In full and final satisfaction of each, any, and all of their claims against the Debtor, each holder of a Class 2A and 2B allowed claim will receive a cash payment equal to its prorated share of the fund remaining after payment of all senior classes of claims which amount is estimated to be $672,168. |
|----|----|----|----|
| | Total amount of Class 2B claims: $13,122,940.17 estimated. | | |
| | The Claims Chart attached as **Exhibit "C"** to the Plan shows all claims which were scheduled by the Debtor and all proofs of claim which have been filed against the Debtor that are in Class 2A and 2B. ~~General unsecured claim of Zions Bancorpopration, N.A. (Claim No. 15).~~ | | Class 2B will not receive interest on their claims. |
| | | | As discussed above, it is estimated that the initial recovery of Class 2B creditors, based on distribution of $672,168, will be approximately 4.1%, which amount may increase in the event that (a) Total Potential Claims will decrease, and (b) the amount to be paid to priority tax claimants will decrease. |
| | | | Distributions on account of claims subject to dispute or event of contingency (such as satisfaction of the debt by a third party) shall be maintained by the Disbursing Agent pending resolution of the disputes and paid promptly thereafter. |
| | ~~Total amount of Class 2B claim is $5,053,112.17.~~ | | ~~Class 2B is a guaranty claim of obligation owing to claimant by 222 N. Brand Blvd Realty LLC, which claim is secured by a first priority security interest in certain commercial real property located in Glendale, CA.~~ |
| | | | ~~Debtor believes that the value of the Property is approximately $5 million, thereby providing adequate protection to claimant.~~ |
| | | | ~~In the unlikely event that the collateral proves to be insufficient;~~ |

15

DEBTOR'S FIRST AMENDED CHAPTER 11 PLAN



, the deficiency claim herein shall be treated as a Class 2A claim and receive distribution *parri passu* with Class 2A general unsecured creditors in full and final satisfaction of the Class 2B claim.

The Debtor reserves the right to object to these claims and to assert all applicable defenses, including challenges to personal liability and the extent of the guarantees.

### V.  MEANS OF EXECUTION AND IMPLEMENTATION OF THIS PLAN

**5.1    Source of Funding for Plan Payments**

Disposable Income Calculation:

Based on Schedules I and J filed on July 5, 2024 (Docket No. 20), the Debtor's disposable income is calculated as follows:

1. Total monthly income (Schedule I): $26,158.00

- This includes $5,658.00 from Truck World and $20,500.00 from other sources (Burke Decor, Parent & Boyfriend)

2. Total monthly expenses (Schedule J): $35,082.00

3. Monthly net income: -$8,924.00 ($26,158.00 - $35,082.00)

In addition, the attached **Exhibit "E"** sets forth projected disposable income over the next five (5) years which confirm that the Debtor does not anticipate generating net disposable income from her employment and compensation.  While the current calculation shows a negative monthly net income, the Debtor's mother, Michele Burke, has committed to contributing $1,500,000 100% of Plan funds to fund the Plan, as detailed in the Declaration of Michele Burke attached to the

~~Plan~~hereto.  This contribution will ensure that creditors receive more than they would in a Chapter 7 liquidation ~~and much faster,~~ thereby satisfying the requirements of 11 U.S.C. § 1[9].

~~The source of funding for payments due under this Plan will be derived from a contribution of funds from the Debtor's family members in accordance with the Declaration of Michele Burke attached hereto. Ms. Burke is the mother of the Debtor.~~

Based on valuation of the estate's interest in the Debtor's assets, which includes a liquidation analysis and waterfall therefrom, a copy of which is attached hereto as **Exhibit "B"**, the Estate's interest in the monetization of the Debtor's assets and interests totals $1,513,224, which ~~amount will be contributed to fund the~~ Plan.  These funds will be transferred to the Debtor's bankruptcy counsel's trust account no later than seven (7) days before the Effective Date of Plan. Based on the foregoing Plan provisions, the funds are expected to be utilized as follows:

| | | |
|---|---|---|
| Available Funds | - | $1,500,000 |
| Less Administrative Claims | - | <$50,000> |
| Less Priority Unsecured | - | <$754,320> |
| Less Class 1 Arrears | - | <u><$23,512></u> |
| Net Available for Unsecureds | - | $672,168 |

These funds will be utilized in strict accordance with the Plan's provisions.

**5.2    Post-Confirmation Management**

As an individual Chapter 11 debtor, the Debtor will maintain control over her personal financial affairs and business interests following confirmation of the Plan.  She will continue to manage her wholly-owned LLCs, including Burke Décor, LLC, Furnishings LA, LLC, and various

17

real estate holding LLCs.  In her post-confirmation role, the Debtor's key responsibilities will include:

1)    Provide oversight and strategic direction for Burke Décor, LLC operations, ensuring the company's continued growth and profitability,

2)    Actively manage her real estate holdings, overseeing development projects and coordinating property sales as outlined in the Plan.

3)    Work closely with retained professionals on ongoing legal and financial matters, ensuring compliance with Plan provisions and addressing any issues that may arise during implementation.

4)    Implement and maintain stringent financial controls and reporting mechanisms across all her business entities, promoting transparency and accountability throughout the post-confirmation period.

**5.3    Retention of Professionals**

To facilitate the successful implementation of the Plan, the Debtor has retained and will continue to employ a team of specialized professionals.  Levene Neale Bender Yoo & Golubchik L.L.P. will serve as bankruptcy counsel, providing ongoing legal advice related to Plan implementation, representing the Debtor in any claim objection litigation, and assisting with necessary Plan modifications.  Armory Consulting Company will act as financial advisor, tasked with preparing and monitoring financial projections, assisting with creditor negotiations and reporting, and analyzing potential property sales and refinancing options.  The Debtor or her affiliate(s) also intend to retain a qualified tax professional to review and potentially amend tax returns, assist with IRS and state tax claim resolutions, and provide advice on the tax implications of Plan transactions.  As the Plan progresses, the Debtor may engage additional professionals as needed, such as a real estate broker to facilitate property sales, ensuring that each aspect of the Plan is executed with the necessary expertise and precision.

**5.4    Resolution of Pending Litigation**

To the extent that the Debtor is named as a party defendant in pending litigation, this Plan shall not supersede or extinguish any rights or claims asserted in such litigation, except as specifically provided by the discharge provisions of 11 U.S.C. § 1192.supersede any rights in the litigation.  To the extent that claims against third parties are being pursued, this Plan will not affect the prosecution of such claims.

All pending litigation against the Debtor shall be stayed during the pendency of the Plan, unless relief from stay is granted by the Court. Upon completion of all payments under the Plan, or upon earlier grant of a discharge under 11 U.S.C. § 1192, the Debtor shall receive the full benefit of the discharge, subject to its terms and limitations.

Nothing in this Plan shall be construed to limit or modify any injunction or other equitable relief properly entered by a court of competent jurisdiction, except as may be provided by the discharge provisions of the Bankruptcy Code.

The Debtor reserves all rights, claims, and defenses with respect to any pending litigation, and nothing in this Plan shall be deemed an admission of liability or a waiver of any rights or defenses in such litigation.

**5.65    Resolution of Tax Claims**

With respect to the asserted priority claims, the Debtor's  or her affiliate(s) intend tohave engage a qualified tax professional to conduct a thorough review of the Debtor's and her affiliates' tax filings. Debtor intends to file amended tax returns for prior years and believes that such filings will lead to reduced obligations owing to taxing authorities. This review may lead to the amendment of returns, potentially amending overall tax liability.

**5.76**    **Reporting Requirements**

The Reorganized Debtor will comply with the following reporting requirements:

1. **Quarterly Post-Confirmation Reports**: Quarterly Post-Confirmation Reports, filed with the Bankruptcy Court, will provide a comprehensive overview of the reorganization's progress.  These reports will include updates on claim resolutions, litigation status, and plan payment progress, along with a detailed accounting of payments made to each class of creditors. The filing of such reports will continue until entry of final decree in this case.

2. **Tax Compliance**: Post-confirmation tax returns will be filed in a timely manner and evidence of this compliance will be provided to the Liquidating Trustee and major creditors.

**5.87**    **Claims Objection Process**

The Debtor shall file objections to claims within 60 days after the Effective Date (the "Claims Objection Deadline"), without prejudice to seeking an extension of such deadline if necessary and appropriate.  The Bankruptcy Court shall retain jurisdiction over such objections. The Debtor reserves the right to object to any claim and to assert all applicable defenses.

**5.98**    **Distribution Process**

Distributions for undisputed claims will be made within 30 days of the Effective Date. For disputed claims, funds will be held in reserve pending resolution of objections. Upon resolution, distributions will be made promptly.

Checks issued in respect of allowed claims shall be null and void if not negotiated within 180 days after the date of issuance thereof.  Requests for reissuance of any check shall be made directly to the Reorganized Debtor by the holder of the allowed claim with respect to which such check originally was issued.  Any claim in respect of such a voided check shall be made on or before the later of (i) the first anniversary of the Effective Date or (ii) 90 days after the date of

issuance of such check.  After such date, all claims in respect of void checks shall be discharged and forever barred, and the Reorganized Debtor shall retain all monies related thereto.

**5.109    Effective Date Actions**

On or about the Effective Date, the following actions will occur:

a)  Receipt of funds from the Debtor's family, which shall occur seven (7) days prior to the Effective Date;

b)  Initial distributions to holders of undisputed claims within 30 days of Effective Date; and

c)  Establishment of reserve accounts for disputed and contingent claims.

The Debtor believes that this Plan provides the best possible outcome for all creditors and offers a feasible path to reorganization. The Debtor reserves the right to modify the Plan as necessary to ensure its successful implementation, subject to applicable provisions of the Bankruptcy Code and Rules.

**5.110    Disbursing Agent**

The Debtor shall serve as the disbursing agent for the purpose of making all distributions provided for under the Plan.  The Debtor, in her capacity as disbursing agent, shall have the sole authority and responsibility for distributions under this Plan, including the obligation to make distributions to holders of allowed claims as required under the Plan.  Debtor shall not receive compensation for her duties as a disbursing agent.  The Debtor shall act as the disbursing agent whether confirmation of the Plan is achieved through consensual or non-consensual means.

## VI.  BEST INTEREST OF CREDITORS TEST AND PLAN FEASIBILITY

A confirmable plan must pass the "best interests of creditors test" (the "Test"), as set forth in 11 U.S.C. § 1129(a)(7).  Under the Test, if a claimant or interest holder is in an impaired class

and that claimant does not vote or accept the Plan, then that claimant or interest holder must receive or retain under the Plan property of value not less than that claimant or interest holder would receive in a hypothetical chapter 7 case.

In the hypothetical chapter 7, the debtor's non-exempt assets are sold by a chapter 7 trustee. Secured creditors are paid first from the sale proceeds of properties on which the secured creditor has a lien. Administrative claims are paid next including the chapter 7 trustee's statutory fee under 11 U.S.C. § 326. Next unsecured creditors are paid from any remaining sales proceeds, according to their priority rights in proportion to the amount of their allowed claim in relationship to the total allowed unsecured claims. Finally, interest holders receive the balance that remains after creditors are paid, if any.

For the Court to be able to confirm the Plan, the Court must find that all creditors and interest holders who do not accept the Plan will receive at least as much under the Plan as such holders would receive under a chapter 7 liquidation of the Debtor's assets. The Debtor maintains that this requirement is clearly met.

Multiple classes under the Plan are impaired to the extent determined to have allowed claims. The Debtor must satisfy the Test with respect to members of such classes that do not vote to accept the Plan.

Attached as **Exhibit "B"** is a demonstration of the liquidation analysis in a hypothetical chapter 7 case, if the case were to be converted to chapter 7 instead of Plan confirmation. As shown in **Exhibit "B"**, all creditors and interest holders will receive more under the Plan as they would under a Chapter 7 liquidation of the Debtor's assets. Specifically, under the Plan, it is anticipated that general unsecured creditors will receive a distribution in the aggregate amount of $672,168, which in a hypothetical Chapter 7 liquidation, the amount would be $461,918. Based on estimated unsecured claims of $10.489 million, under the Plan, distribution to general unsecured creditors will be approximately 6.4% while, in the event of a hypothetical liquidation, the dividend

to general unsecured creditors would be 4.4%.  It is clear that Plan confirmation is superior to a potential liquidation.

Moreover, in a liquidation, the amount and timing of payments is uncertain since factors such as market values, time to sell and tax implications would be a factor.  In this case, because 100% of Plan payments will be funded by the Effective Date, this uncertainty and risk is not an issue.

**VII.  TREATMENT OF CREDITORS' CLAIMS UNDER THE PLAN**

1.    Post-Confirmation Management and Compensation

The Debtor is an individual and, as such, is not managed by anyone.  After the Effective Date, the Debtor will manage and operate her current businesses and her personal financial affairs.

2.    Objections to Claim

The Debtor or the Reorganized Debtor, as the case may be, will file objections to all claims that are inconsistent with the Debtor's books and records or are otherwise objectionable to them unless they deem the inconsistency to be insignificant.  Any other party in interest shall have the right to prosecute claim objections as well.  With respect to disputed claims that are not resolved prior to the Effective Date, the Reorganized Debtor will have the authority, in its sole discretion, and in the reasonable exercise of its business judgment, to settle or compromise any disputed claim without further notice or Court approval.  As provided by Section 502(c) of the Bankruptcy Code, the Bankruptcy Court may estimate any contingent or unliquidated disputed claim for purposes of confirmation of the Plan.

3.    Avoidance Actions, Strong Arm Powers, and Causes of Action

The Debtor reviewed her transactions with creditors and transfers of funds.  Based on such investigation, the Debtor believes that there are no valuable avoidance claims and causes of action that may be pursued for the benefit of the estate and all creditors.  Nevertheless, in an overabundance of caution, all avoidance actions and strong-arm powers of a trustee under chapter 5

of the Bankruptcy Code, shall irrevocably vest in the Debtor and be transferred in total to the Reorganized Debtor upon confirmation of the Plan.  The deadline for filing avoidance actions under chapter 5 of the Bankruptcy Code shall be the 90 days after the Plan Effective Date.

4.    **Employment of Professionals by the Reorganized Debtor and Payment of Professional Fees and Expenses after the Effective Date**

On and after the Effective Date, the Reorganized Debtor shall have the right to employ and compensate professionals as the Reorganized Debtor determine is appropriate and to compensate any such professionals without the need for any notice or further order of the Bankruptcy Court.

5.    **Distributions to be Made Pursuant to the Plan**

Except as otherwise agreed to by the Reorganized Debtor in writing, distributions to be made to holders of allowed claims pursuant to the Plan may be delivered by regular mail, postage prepaid, to the address shown in the Debtor's schedules, as they may from time to time be amended in accordance with Bankruptcy Rule 1009, or, if a different address is stated in a proof of claim duly filed with the Bankruptcy Court, to such address.  Checks issued to pay allowed claims shall be null and void if not negotiated within ~~sixty (60)~~180 days after the date of issuance thereof.

6.    **Exculpations and Releases**

To the maximum extent permitted by law, neither the Debtor, the Reorganized Debtor, nor any of their professionals employed or retained by any of them, whether or not by Bankruptcy Court order, shall have or incur any liability to any person or entity for any act taken or omission made in good faith in connection with or related to the formulation and implementation of the Plan, or a contract, instrument, release, or other agreement or document created in connection therewith, the solicitation of acceptances for or confirmation of the Plan, or the consummation and implementation of the Plan and the transactions contemplated therein, including the distribution of estate funds.

7. **Injunctions**

The Plan Confirmation Order shall enjoin the prosecution, whether directly, derivatively or otherwise, of any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, equitable remedy, liability or interest released, discharged, stayed, or terminated pursuant to the Plan.  Except as provided in the Plan or the Plan Confirmation Order, as of the Plan Effective Date, all entities that have held, currently hold or may hold a claim or other debt or liability or equitable remedy that was stayed or is discharged or an interest or other right of an equity security holder that is extinguished pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions against 1) the Debtor, or the Reorganized Debtor, or 2) the Debtor's property, on account of any such discharged claims, debts or liabilities or extinguished interests or rights:

a)  commencing or continuing, in any manner or in any place, any action or other proceeding;

b)  enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order;

c)  creating, perfecting or enforcing any lien or encumbrance;

d)  asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor; and

e)  commencing or continuing any action in any manner, in any place, that does not comply with or is inconsistent with the provisions of the Plan.

By accepting distributions pursuant to the Plan, each holder of an allowed claim receiving distributions pursuant to the Plan shall be deemed to have specifically consented to the injunctions set forth in this Section.  The injunction described in this paragraph (the "Injunction") is applicable to all creditors and parties in interest with respect to claims or causes of action arising or existing prior to the Effective Date.

DEBTOR'S FIRST AMENDED CHAPTER 11 PLAN

All creditors and parties in interest who are presented with a copy of the Plan Confirmation Order are charged with actual knowledge of the Injunction and with actual knowledge that the Injunction is applicable to said creditor and/or party in interest (the "Actual Knowledge"), such that it is impossible for said creditor and/or party in interest to have a good faith belief that the Injunction does not apply to said creditor's and/or party in interest's claim or cause of action. Accordingly, any creditor and/or party in interest charged with such Actual Knowledge may be held in contempt for violating the Injunction, which contempt proceeding shall include the Reorganized Debtor's reasonable attorneys' fees and costs for enforcing the Injunction.

8.      **Executory Contracts and Unexpired Leases**

The Debtor does not believe that she is a party to any executory contracts or unexpired leases.  However, as of the Effective Date, any executory contract and/or unexpired lease to which the Debtor are a party shall be deemed to be rejected by the Debtor effective as of 11:59 PST on the Effective Date.  THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF AN UNEXPIRED LEASE OR EXECUTORY CONTRACT WHICH IS REJECTED ON THE PLAN EFFECTIVE DATE WILL BE THIRTY DAYS AFTER THE PLAN EFFECTIVE DATE.  Any claim resulting from the Debtor's rejection of an unexpired lease or executory contract will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.  Any allowed claim resulting from the Debtor's rejection of an unexpired lease or executory contract will constitute a Class 7 allowed claim, subject to the limitations set forth in 11 U.S.C. § 502(b) and other applicable sections of the Bankruptcy Code.

9.      **Changes in Rates Subject to Regulatory Commission Approval**

The Debtor is not subject to governmental regulatory commission approval of their rates.

10.     **Retention of Jurisdiction**

After confirmation of the Plan and occurrence of the Effective Date, in addition to jurisdiction which exists in any other court, the Bankruptcy Court will retain such jurisdiction as is legally permissible including for the following purposes:

i.     To resolve any and all disputes regarding the operation and interpretation of the Plan and the Plan Confirmation Order;

ii.     To determine the allowability, classification, or priority of claims and interests upon objection by the Debtor or the Reorganized Debtor and to consider any objection to claim or interest whether such objection is filed before or after the Effective Date;

iii.     To determine the extent, validity and priority of any lien asserted against property of the Debtor and property of the Debtor's estate;

iv.     To construe and take any action to enforce the Plan, the Confirmation Order, and any other order of the Bankruptcy Court, issue such orders as may be necessary for the implementation, execution, performance, and consummation of the Plan, the Plan Confirmation Order, and all matters referred to in the Plan and the Plan Confirmation Order, and to determine all matters that may be pending before this Bankruptcy Court in this Bankruptcy Case on or before the Effective Date with respect to any person or entity related thereto;

v.     To determine any and all applications for allowance of compensation and reimbursement of expenses of professionals for the period on or before the Effective Date;

vi.     To determine any request for payment of administrative expenses;

vii.     To determine motions for the rejection, assumption, or assignment of executory contracts or unexpired leases filed before the Effective Date and the allowance of any claims resulting therefrom;

viii.     To determine all applications, motions, adversary proceedings, contested matters, and any other litigated matters instituted during the pendency of the Bankruptcy Case whether before, on, or after the Effective Date.

ix.    To determine such other matters and for such other purposes as may be provided in the Plan Confirmation Order;

x.    To modify the Plan under Section 1193 of the Bankruptcy Code in order to remedy any apparent defect or omission in the Plan or to reconcile any inconsistency in the Plan so as to carry out its intent and purpose upon motion by the Reorganized Debtor;

xi.    Except as otherwise provided in the Plan and the Plan Confirmation Order, to issue injunctions, to take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or the Plan Confirmation Order, or the execution or implementation by any person or entity of the Plan or the Plan Confirmation Order;

xii.    To issue such orders in aid of consummation of the Plan and the Plan Confirmation Order, notwithstanding any otherwise applicable nonbankruptcy law, with respect to any person or entity, to the fullest extent authorized by the Bankruptcy Code or Bankruptcy Rules;

xiii.    To enter a discharge, under 1 1 U.S.C. §§ 1192 and 114l (d), if applicable; and

xiv.    To enter a final decree closing the Bankruptcy Case.


## VIII.  EFFECT OF PLAN CONFIRMATION

**A.**    **Discharge**

If the Plan is confirmed pursuant to 11 U.S.C. § 1191(a), the Debtor shall receive a discharge of her debts pursuant to 11 U.S.C. § 1141(d) on the Effective Date.  If the Plan is confirmed pursuant to 11 U.S.C. § 1191(b), the Debtor shall receive a discharge pursuant to U.S.C. §§ 1192 and 1141(d), as soon as practicable after the Debtor has completed payment to the classes for which the Plan was confirmed pursuant to 11 U.S.C. § 1191(b).

**B.**  **Modification of the Plan**

  A debtor may modify the Plan at any time before confirmation.  However, the Bankruptcy Court may require re-voting on the Plan if the Debtor modifies the Plan before confirmation in a manner that materially and adversely affects a creditor or interest holder that had voted in favor of the Plan.  If the Plan is confirmed pursuant to 11 U.S.C. § 1191(a), the Reorganized Debtor may seek to modify the Plan at any time after confirmation of the Plan so long as (1) the Plan has not been substantially consummated, (2) circumstances warrant the modification, and (3) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.  If the Plan is

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

1  confirmed pursuant to 11 U.S.C. § -1191(b), the Reorganized Debtor may seek to modify the Plan

2  during the life of the Plan as fixed by the Court, so long as (1) the modified plan still meets the

3  requirements of 11 U.S.C. § 1191(b), (2) circumstances warrant the modification, and (3) the

4  Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

5  **C.**    **Post-Confirmation Status Report**

6      Until a final decree closing the Bankruptcy Case is entered, the Reorganized Debtor will

7  file quarterly post-confirmation status reports with the Bankruptcy Court explaining what progress

8  has been made toward consummation of the confirmed Plan.

9      Any creditor or any party in interest may bring a motion to convert or dismiss the

10  Bankruptcy Case under section 1112(b) of the Bankruptcy Code after the Plan is confirmed, but

11  before the final decree is entered, if there is a default in performing the Plan.  If the Bankruptcy

12  Court orders the Bankruptcy Case converted to chapter 7 after the Plan is confirmed, then all

13  property that had been property of the Debtor's chapter 11 estate that has not been disbursed

14  pursuant to the Plan will revest in the chapter 7 estate and the automatic stay will be reimposed

15  upon the revested property, but only to the extent that relief from stay was not previously

16  authorized by the Bankruptcy Court during the Bankruptcy Case.  The Plan Confirmation Order

17  may be revoked under very limited circumstances.  The Bankruptcy Court may revoke the Plan

18  Confirmation Order.

19  **D.**    **Final Decree**

20      Once the Estate has been fully administered as referred to in Federal Rule of Bankruptcy

21  Procedure 3022, or substantially consummated or as otherwise applicable and provided by law, the

22  Reorganized Debtor will file a motion with the Bankruptcy Court to obtain a final decree to close

23  the Bankruptcy Case.  The Reorganized Debtor will be responsible for the timely payment of all

24  fees incurred pursuant to 28 U.S.C. § 1930(a)(6) should any exist.

25  Dated: ~~September 18~~October 25, 2024      Respectfully submitted,

26

27

28              By:  _____
                    Erin Elizabeth Burke, Debtor

                                30
                    _____
                    DEBTOR'S FIRST AMENDED CHAPTER 11 PLAN

Presented by:

LEVENE, NEALE, BENDER, YOO & GOLUBCHIK, L.L.P.

By:    _/s/ David B. Golubchik_
       David B. Golubchik
       Yihan She
       Attorneys for Debtor and Plan Proponent

---

DEBTOR'S FIRST AMENDED CHAPTER 11 PLAN

**DECLARATION OF ERIN E. BURKE**

I, ERIN E. BURKE, hereby declare as follows:

1.      I have personal knowledge of the facts set forth below and, if called to testify, would and could competently testify thereto.

2.      I am the debtor and debtor in possession in this Chapter 11 bankruptcy case.

3.      I have reviewed the Plan of Reorganization to which this Declaration is attached.  I hereby confirm that the information set forth in the Plan is true and correct to the best of my knowledge and I incorporate the factual statements therein by this reference.

4.      I have disclosed all my assets and all my liabilities to be best of my information and knowledge.

5.      My goal in this case is to achieve an effective reorganization without the need for further litigation or delays.  While I have used best efforts to market and sell the real properties owned by my LLCs, to date, the efforts have not been successful.  As a result, I have requested my family to assist me in funding this Plan, to which my mother agreed as set forth in her accompanying Declaration.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this ~~18th~~ 25th day of ~~September~~ October, 2024 at Los Angeles, California.

By:_____
            ERIN E. BURKE

**DECLARATION OF MICHELE BURKE**

I, MICHELE BURKE, hereby declare as follows:

1.      I have personal knowledge of the facts set forth below and, if called to testify, would and could competently testify thereto.

2.      I am the mother of Erin Burke, which is the debtor and debtor in possession in this Chapter 11 bankruptcy case.

3.      To assist Erin in connection with her reorganization efforts, I have agreed to provide to Erin (through her counsel), the sum of $1,500,000 in order to allow her to make necessary payments to creditors under her Plan. Attached hereto as **Exhibit "D"** is a true and correct copy of my trust's bank statement which shows the availability of such funds. Upon confirmation of the Plan, and not later than seven (7) days before the Effective Date of the Plan, I will transfer $1,513,224 to Erin's bankruptcy counsel's trust account to be utilized in accordance with the provisions of the Plan to which this Declaration is attached. The funding will not be a loan to Erin and will not be subject to repayment by Erin.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 18th day of September, 2024 at San Diego, California.


By:_____
      MICHELE E. BURKE

DEBTOR'S FIRST AMENDED CHAPTER 11 PLAN

**EXHIBIT "A" – SCHEDULES OF ASSETS AND LIABILITIES**

Formatted: No underline

**EXHIBIT "B" – ESTATE ASSET VALUATION AND LIQUIDATION ANALYSIS**

**EXHIBIT "C" – SCHEDULED AND FILED CLAIM CHART**

**EXHIBIT "D" –PROOF OF FUNDS**

**EXHIBIT "E" – PROJECTED DISPOSABLE INCOME**

Formatted: Font: Bold

i

DEBTOR'S FIRST AMENDED CHAPTER 11 PLAN

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 2818 La Cienega Avenue, Los Angeles, CA 90034.

A true and correct copy of the foregoing document entitled: **Notice Of Submission Of Redline Version Of "Debtor's First Amended Sub-Chapter V Plan Of Reorganization"** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **October 25, 2024**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Todd S. Garan    ch11ecf@aldridgepite.com, TSG@ecf.inforuptcy.com;tgaran@aldridgepite.com
- David B Golubchik    dbg@lnbyg.com, dbg@lnbyg.com
- Gaye N Heck    gheck@bbslaw.com
- Gregory Kent Jones (TR)    gjones@sycr.com, smjohnson@sycr.com;C191@ecfcbis.com;cpesis@stradlinglaw.com
- Alexandria Lattner    alattner@sheppardmullin.com, ehwalters@sheppardmullin.com
- Anne C Manalili    anne.manalili@sba.gov
- Yihan She    yas@lnbyg.com
- David Samuel Shevitz    David.S.Shevitz@usdoj.gov
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

**2.  SERVED BY UNITED STATES MAIL**: On **October 25, 2024**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

None.                                                                  ☐ Service list attached

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **October 25, 2024**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

None.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| October 25, 2024 | Rebecka Merritt | /s/ Rebecka Merritt |
|---|---|---|
| Date | Type Name | Signature |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                              **F 9013-3.1.PROOF.SERVICE**